**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **OPTI-COM MANUFACTURING NETWORK, LLC** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-9647** |
| **CHAMPION FIBERGLASS, INC.** | **SECTION: "G"(1)** |

## ORDER

Pending before the Court is Defendant Champion Fiberglass, Inc.'s ("Defendant") "Motion to Dismiss for Lack of Personal Jurisdiction."[1] In this litigation, Plaintiff Opti-Com Manufacturing Network, LLC ("Plaintiff") alleges that Defendant misappropriated trade secrets in violation of the Defend Trade Secrets Act of 2016 and several causes of action under Louisiana law.[2] Defendant filed the instant motion to dismiss, arguing that the Court lacks personal jurisdiction over it because it is a Texas corporation and has no contacts with the state of Louisiana.[3] In opposition, Plaintiff contends that the Court has personal jurisdiction over Defendant because Defendant has sufficient contacts with Louisiana.[4] Having reviewed the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will deny the motion.

---

[1] Rec. Doc. 8.

[2] Rec. Doc. 1 at 1.

[3] Rec. Doc. 8.

[4] Rec. Doc. 16.

## I. Background

### A. Factual Background

In the Complaint, Plaintiff alleges that Defendant breached their contractual agreements and misappropriated trade secrets throughout the course of their business dealings.[5] Plaintiff avers that since the late 1980s, it has contracted for Defendant to manufacture fiberglass conduits and other products for Plaintiff to sell to third parties.[6] Plaintiff contends that it fronted the costs for all equipment, maintained ownership of the materials, and shared manufacturing secrets with Defendant.[7] Plaintiff then avers that Defendant failed to abide by a best pricing agreement, utilized Plaintiff's manufacturing secrets without its permission, and solicited Plaintiff's customers.[8] Plaintiff asserts violations of the Defend Trade Secrets Act of 2016 ("DTSA") and state law claims for misappropriation of trade secrets, unfair trade practices, breach of contract, conversion, and unjust enrichment.[9]

### B. Procedural Background

On October 17, 2018, Plaintiff filed the Complaint against Defendant.[10] On March 1, 2019, Defendant filed the instant Motion to Dismiss.[11] On April 2, 2019, Plaintiff filed a memorandum

---

[5] Rec. Doc. 1 at 1–2.

[6] *Id.* at 2–8.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 8–12.

[10] Rec. Doc. 1.

[11] Rec. Doc. 8.

in opposition.[12] On April 10, 2019, the Court heard oral argument on the motion.[13] With leave of Court, Defendant filed a reply on April 22, 2019.[14]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion to Dismiss*

In the motion, Defendant urges the Court to dismiss the case for lack of personal jurisdiction because it is a Texas corporation and has no contacts with the state of Louisiana.[15] First, Defendant alleges that the Court does not have specific jurisdiction over it because it has no physical presence in Louisiana and conducts no business in the state.[16] Defendant avers that it has no minimum contacts with the state of Louisiana because "merely contracting with a resident of [a] forum state" does not create sufficient contacts for personal jurisdiction, and "[Defendant] did not purposefully direct its activities to Louisiana and [Plaintiff]'s claims do not arise from or relate to [Defendant]'s contacts with Louisiana."[17] Defendant contends that the only state that has personal jurisdiction over Defendant in this matter is the state of Texas.[18]

Defendant then presents the Declaration of Goran Haag ("Mr. Haag"), Defendant's President and Corporate Secretary,[19] and alleges that the Declaration sets forth facts that controvert all factual allegations that Plaintiff could provide as the basis for personal jurisdiction.[20] In the Declaration, Mr. Haag states that Defendant has no offices, employees, directors, property, or bank

---

[12] Rec. Doc. 16.

[13] Rec. Doc. 21.

[14] Rec. Doc. 23.

[15] Rec. Doc. 8-1 at 5.

[16] *Id.* at 3.

[17] *Id.* (quoting *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)).

[18] *Id.*

[19] Rec. Doc. 8-2.

[20] Rec. Doc. 8-1 at 4.

accounts in Louisiana.[21] Mr. Haag also states that Defendant conducts business in Louisiana only through local representatives and said business represents only 1% of Defendant's sales over the past five years.[22] Defendant asserts that this evidence does not establish a *prima facie* case supporting personal jurisdiction over Defendant.[23] Therefore, Defendant argues that if the Court were to exercise jurisdiction over Defendant, it would offend traditional notions of fair play and substantial justice.[24] For these reasons, Defendant urges the Court to grant the motion to dismiss based on a lack of personal jurisdiction.[25]

### B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss*

In opposition, Plaintiff argues that the Court has personal jurisdiction over Defendant because Defendant had enough contacts with Louisiana over the parties' thirty-year business relationship that both specific jurisdiction and general jurisdiction exist.[26]

#### 1.    General Jurisdiction

Plaintiff acknowledges that the standard for general jurisdiction as set out in cases such as *Daimler AG v. Bauman*,[27] is "more difficult" to establish, but Plaintiff nevertheless asserts that general jurisdiction exists over Defendant.[28] Plaintiff points to the statements set out in the Complaint that detail the history between the Plaintiff and Defendant, wherein Plaintiff loaned Defendant $54,432 to begin Defendant's company, the parties contracted for the manufacturing of

---

[21] Rec. Doc. 8-2 at 1.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 5.

[26] Rec. Doc. 21 at 9–15.

[27] 571 U.S. 117 (2014).

[28] *Id.* at 9.

goods and joint ventures with clients, and the parties operated under a pricing agreement for over twenty years.[29]

Plaintiff presents the affidavit of Andrew Cousins ("Mr. Cousins"), Plaintiff's owner and vice president, wherein Mr. Cousins further details the relationship between Plaintiff and Defendant.[30] In the affidavit, Mr. Cousins presents several of Defendant's visits to Louisiana to negotiate agreements and hundreds of communications that were sent between Louisiana and Texas.[31] Mr. Cousins also states that Defendant engaged sales representatives in Louisiana and is involved in projects for the Louisiana state government.[32] For these reasons, Plaintiff argues that Defendant's "contacts with Louisiana are so continuous and systematic as to subject Champion to general jurisdiction in Louisiana."[33]

### 2.    Specific Jurisdiction

Plaintiff then avers that "even if [Defendant] is not subject to general jurisdiction, it is subject to specific jurisdiction because [Plaintiff]'s claims directly arise from [Defendant]'s contacts with Louisiana.[34] Plaintiff asserts that the key element of personal jurisdiction is not whether Defendant was physically present in Louisiana, but whether Defendant purposefully directed activities towards Louisiana.[35] Plaintiff also contends that when communications are involved, if those communications related to an intentional tort action, this can constitute

---

[29] *Id.* at 9–10.

[30] Rec. Doc. 25-1.

[31] *Id.* at 1–2.

[32] *Id.* at 2–3.

[33] Rec. Doc. 16 at 11.

[34] *Id.*

[35] *Id.* at 12.

purposeful availment.[36] As support, Plaintiff refers back to Mr. Cousin's affidavit, wherein he alleges that Defendant communicated with and visited Louisiana multiple times, money was accepted in Louisiana, and Defendant breached the parties' agreements by competing against Plaintiff in Louisiana.[37] Further, Plaintiff states that several of the claims in this action are tort allegations that allow for personal jurisdiction to more easily attach to Defendant because the torts were committed in Louisiana in violation of Louisiana law.[38]

Plaintiff presents two cases decided by other district courts in the Eastern District of Louisiana, wherein plaintiffs succeeded in establishing personal jurisdiction by proving that the defendants engaged in tortious conduct within the state such as violating the Louisiana Uniform Trade Secrets Act ("LUTSA") and making misrepresentations.[39] Finally, Plaintiff contends that it would not be unfair and unreasonable for the Court to exercise personal jurisdiction over Defendant because both Texas and Louisiana have the same level of overall convenience for the parties.[40]

Accordingly, Plaintiff argues that the Court has both specific and general jurisdiction over Defendant and the Court should deny the motion to dismiss.[41]

### C.    *Defendant's Arguments in Further Support of the Motion to Dismiss*

In reply, Defendant argues that the Court does not have general or specific jurisdiction over it because Plaintiff cannot prove that Defendant's contacts with Louisiana are sufficient for either.[42]

---

[36] *Id.*

[37] *Id.*

[38] *Id.* at 12–13.

[39] *Id.* at 13–14.

[40] *Id.* at 15.

[41] *Id.*

[42] Rec. Doc. 23 at 1.

Defendant asserts that it is extremely rare for courts to find general jurisdiction in a state where a corporation is neither headquartered nor incorporated.[43] Defendant contends that it is "in no sense at home in Louisiana," and its limited contacts with Plaintiff and 1% of total sales in Louisiana do not change this fact.[44]

Defendant alleges that to prove specific jurisdiction, Plaintiff cannot rely on "conclusory statements that there have been multiple phone calls and correspondence with Louisiana;" Plaintiff must specifically establish minimum contacts related to each of its claims.[45] Regarding Plaintiff's breach of contract claim, Defendant asserts that Plaintiff cannot establish that a contract existed or that damages arose from Defendant's alleged actions.[46] Defendant also asserts that Plaintiff cannot establish specific jurisdiction based on its tort claims because Plaintiff cannot prove that a tort actually occurred or that it was committed in Louisiana.[47] Defendant avers that Plaintiff does not present evidence of a misappropriation of trade secrets or unfair trade practices happening in Louisiana.[48] Defendant also contends that Plaintiff does not prove that a conversion happened in Louisiana or that the state of Louisiana recognizes the tort of conversion that Plaintiff attempts to assert.[49] Therefore, Defendant argues that Plaintiff cannot prove any contacts with Louisiana sufficient to establish either specific or general jurisdiction, and for these reasons, Defendant urges the Court to grant its motion to dismiss.[50]

---

[43] *Id.*

[44] *Id.* at 3.

[45] *Id.* at 4.

[46] *Id.* at 5.

[47] *Id.* at 6–7.

[48] *Id.* at 7–8.

[49] *Id.* at 8.

[50] *Id.* at 8–9.

### III. Legal Standard

In deciding a motion to dismiss for lack of personal jurisdiction, a court may consider
"affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized
methods of discovery."[51] In this inquiry, a court accepts as true the plaintiff's uncontroverted
allegations, and resolves in the plaintiff's favor "all conflicts between the facts contained in the
parties' affidavits and other documentation."[52] At this stage of the litigation, the plaintiff bears the
burden of establishing only a *prima facie* case of personal jurisdiction."[53]

A federal district court sitting in diversity may exercise personal jurisdiction over a non-
resident defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over
the defendant and (2) the exercise of personal jurisdiction is consistent with the due process
guarantees of the United States Constitution.[54] Louisiana's long-arm statute is drafted very broadly,
allowing for jurisdiction to extend as far as is permissible under the federal constitution.[55]
Therefore, this Court must only determine whether the exercise of its jurisdiction satisfies the
requirements of constitutional due process.

A court may exercise personal jurisdiction over a non-resident defendant on the basis of
specific or general jurisdiction.[56] Specific jurisdiction requires a plaintiff to demonstrate that "(1)
there are sufficient (*i.e.*, not random, fortuitous, or attenuated) pre-litigation connections between
the non-resident defendant and the forum; (2) the connection has been purposefully established by

---

[51] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

[52] *Id.*

[53] *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citing *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002)).

[54] *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted).

[55] La. Rev. Stat. § 13:3201(B) ("In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.").

[56] *Pervasive Software, Inc. v. Lexware GmbH & Co. Kg.*, 688 F.3d 214, 220 (5th Cir. 2012).

the defendant; and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts."[57] If a plaintiff makes such a showing, the defendant can then defeat the exercise of specific jurisdiction by showing that it would nevertheless fail the basic fairness test.[58]

General jurisdiction requires a showing of substantial, continuous, and systematic contacts between a nonresident defendant and a forum.[59] "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum."[60] Following the Supreme Court decision in *Daimler AG v. Bauman*, the Fifth Circuit wrote that "the proper consideration when determining general jurisdiction is whether the defendant's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'"[61] The place of incorporation and principal place of business are where a corporation is considered to be "at home" and "are thus paradigm bases for jurisdiction."[62] Considering the high threshold set in *Daimler*, the Fifth Circuit noted that it is "incredibly difficult to establish general jurisdiction" in a forum other than a corporation's place of incorporation or principal place of business.[63]

If a court determines that it lacks jurisdiction over a defendant, the court can either dismiss the case under Rule 12(b)(2) or, if it is in the interests of justice, transfer the case to any other

---

[57] *Id.* at 221.

[58] *Id.* at 221–22.

[59] *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. 408, 414–419 (1984)).

[60] *Id.* (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

[61] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (quoting in part *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

[62] *Id.* (citing *Daimler*, 571 U.S. at 137).

[63] *Id.*

district where the action could have been brought under 28 U.S.C. § 1406(a).[64] The Fifth Circuit

has determined that Section 1406(a) not only allows transfer where venue is improper, but also

permits transfer where the original court lacks personal jurisdiction.[65]

## IV. Analysis

### A.    *General Jurisdiction*

Defendant argues that it is not subject to general jurisdiction in Louisiana because it is

incorporated under the laws of the state of Texas, has its principal place of business in Texas, and

is not "at home" in Louisiana.[66] To exercise general jurisdiction over a nonresident defendant, the

defendant's contacts with the forum state must be continuous and systematic, such that the

nonresident defendant feels at home in the forum state.[67] Corporations are considered to be "at

home" in their state of incorporation and the state where their principal place of business is

located.[68] Per Fifth Circuit precedent, establishing general jurisdiction in any other forum would

be "incredibly difficult."[69]

In *BNSF Ry. Co. v. Tyrrell*, the Supreme Court decided that a nonresident railroad company

that was incorporated and had its principal place of business out of state was not subject to general

jurisdiction in Montana, even though the company had over 2,000 miles of track in Montana and

employed over 2,000 Montana residents.[70] The Supreme Court stressed that just because a

---

[64] *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013); *see also Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985).

[65] *Id.*

[66] Rec. Doc. 8-1 at 2; Rec. Doc. 23 at 3.

[67] *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citing *Helicopteros Nacionales de Colombia*, 466 U.S. at 414–419).

[68] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).

[69] *Id.*

[70] 137 S. Ct. 1549, 1559 (2017).

corporation conducts substantial business in a state, that business does not make the corporation "at home" as a "corporation that operates in many places can scarcely be deemed at home in all of them."[71] In contrast, the Supreme Court has highlighted *Perkins v. Benguet Consolidated Mining Company*[72] as one of the "exceptional" cases where a nonresident corporation could be subject to the general jurisdiction of a state where it is neither incorporated nor has its principal place of business.[73] In *Perkins*, the nonresident defendant was headquartered and incorporated in the Philippines, but war in the Philippines forced the company to temporarily relocate to Ohio, which became the center of the corporation's management during the duration of the war.[74]

Here, like in *Tyrrell*, Defendant is neither incorporated under the laws of Louisiana nor does it have its principal place of business in Louisiana. Defendant presents the Declaration of Goren Haag, the company president, which states that Defendant has no offices, bank accounts, or property in Louisiana and no employees in Louisiana.[75] The Declaration asserts that Defendant's products are distributed in Louisiana in the same manner as products in other states—only through local distributors and independent sales representatives.[76] The Declaration also represents that Defendants' total sales in Louisiana were less than approximately 1% of its average annual sales over the last five years.[77]

To counter Defendant's evidence regarding its lack of ties to Louisiana, Plaintiff asserts that Defendant visited Louisiana on several occasions, sent communications to Louisiana, engaged

---

[71] *Id.*

[72] 342 U.S. 437 (1952).

[73] *Daimler AG*, 571 U.S. at 150.

[74] *Id.* (discussing *Perkins*, 342 U.S. 437).

[75] Rec. Doc. 8-2.

[76] *Id.* at 1.

[77] *Id.*

sales representatives in Louisiana, and is involved in projects for Louisiana's state government.[78]

Though these activities demonstrate that Defendant has some contact with the state of Louisiana, they are insufficient to no make Defendant "at home" in Louisiana. This case is similar to *Tyrrell*, where the nonresident defendant railroad company was not "at home" in Montana even though it employed 2,000 Montana residents and covered 2,000 miles of railroad track.[79] Furthermore, these facts do not present an "exceptional" case like in *Perkins*, as Defendant is not utilizing Louisiana as its headquarters.[80] Thus, Defendant is not subject to general jurisdiction in Louisiana.

**B.    *Specific Jurisdiction***

Defendant argues that it is not subject to specific jurisdiction in Louisiana because Plaintiff does not prove that Defendant engaged in sufficient contacts with the state of Louisiana or that Defendant committed the elements of Plaintiff's breach of contract and tort claims.[81] Specific jurisdiction can be summarized as a three-step inquiry: "(1) whether the defendant ... purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."[82]

A defendant's "single or occasional acts" in a state may be sufficient to establish specific jurisdiction over the Defendant when the cause of action asserted arises out of or is related to those

---

[78] Rec. Doc. 21 at 9–10.

[79] *BNSF Ry. Co.*, 137 S. Ct. at 1559.

[80] *Daimler*, 571 U.S. at 117.

[81] Rec. Doc. 8-1 at 4–5; Rec. Doc. 23 at 3–8.

[82] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 271 (5th Cir. 2006)).

contacts.[83] However, a plaintiff's own contacts with the forum state cannot be used to demonstrate contacts by the defendant.[84] The inquiry's key focus is on the relationship among the defendant, the forum, and the litigation.[85]

Here, Defendant argues that "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."[86] Based on this, Defendant asserts that Plaintiff must establish minimum contacts for each of its causes of action.[87] Defendant, however, misapplies the Fifth Circuit's precedent. The Fifth Circuit has determined that "[a] plaintiff bringing multiple claims that *arise out of different forum contacts of the defendant* must establish specific jurisdiction for each claim."[88] Thus, specific jurisdiction is a claim specific inquiry only when a plaintiff alleges that different contacts with the forum gave rise to different causes of action.[89]

The case which Defendant cites in support of its argument, *Seiferth v. Helicopteros Atuneros, Inc.*,[90] serves to illustrate the distinction between when a claim-specific inquiry is required, and when it is not. In *Seiferth*, the plaintiff brought four causes of action: defective design, failure to warn, negligence, and negligence *per se*. The defective design claim arose from the defendant's design of a work platform; whereas the other three claims arose from the defendant's transport of the platform to Mississippi and inspection of the platform while in the

---

[83] *Pervasive Software Inc.*, 688 F.3d at 220.

[84] *Monkton Ins. Servs.*, 768 F.3d at 433.

[85] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)).

[86] Rec. Doc. 19-2 at 3 (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006)).

[87] *Id.* at 4.

[88] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (emphasis added).

[89] *Seiferth*, 472 F.3d at 274–75.

[90] *Id.*

state.[91] Because the causes of action arose from defendant's different contacts with the forum, the appellate court conducted a claim-specific inquiry regarding each claim when determining whether specific jurisdiction existed.[92]

In contrast, Plaintiff in this case asserts that all of the causes of action arise from the same contacts that Defendant had with the state of Louisiana. Specifically, Plaintiff contends that Defendant engaged in contacts with Louisiana while negotiating and executing agreements between the parties, and Defendant breached these agreements in and outside the state of Louisiana.[93] The foundation of Plaintiff's case are the agreements that arose from these interactions, and the other five tort claims stem from the breach of these agreements.[94] Therefore, all of Plaintiff's causes of actions arise from the same contacts, and a claim-specific inquiry is not required. Rather, the Court must determine whether Defendant's contacts with Louisiana regarding the agreements are sufficient for the exercise of specific jurisdiction.

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'"[95] In analyzing specific jurisdiction related to a contract claim, it is "well settled that 'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum.'"[96] Instead, "only those acts which relate to

---

[91] *Id.*

[92] *Id.*

[93] Rec. Doc. 1 at 2–8.

[94] *Id.* at 8–12.

[95] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266 (5th Cir. 2006)).

[96] *Pervasive Software Inc.*, 688 F.3d at 222–23 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

the formation of the contract and the subsequent breach are relevant."[97] The Court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing ...in determining whether the defendant purposefully established minimum contacts within the forum."[98]

To establish Defendant's minimum contacts with Louisiana, Plaintiff presents the affidavit of Andrew Cousins, Plaintiff's owner and vice president.[99] In the affidavit, Cousins avers that over the parties' thirty-year business relationship, Defendant traveled to Louisiana multiple times to negotiate agreements and sent many communications, including phone calls and emails, to Louisiana in an attempt to finalize the details of these agreements.[100] Plaintiff alleges that in or around 1989, Defendant traveled to Louisiana at least twice to negotiate an agreement regarding the production of fiberglass conduits.[101] Plaintiff asserts that also in 1989, Defendant visited Louisiana at least once to execute a second agreement for fiberglass conduits.[102] Additionally, Plaintiff maintains that in 1990, telephone calls and meetings in Louisiana centered around Plaintiff providing Defendant with "financial aid and expertise" to aid in Defendant's business.[103] Plaintiff also contends that during the 1989–1991 period, Defendant's representatives visited Plaintiff's facility in Louisiana "for the purpose of developing [a] bullet resistant fiberglass conduit."[104]

---

[97] *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 489 (5th Cir. 2018).

[98] *Burger King*, 471 U.S. at 474–75.

[99] Rec. Doc. 25-1.

[100] *Id.*

[101] *Id.* at 1.

[102] *Id.* at 2.

[103] *Id.* at 2.

[104] *Id.* at 3.

Plaintiff then presents the text of a facsimile regarding a 1991 meeting between Plaintiff and Defendant.[105] According to Plaintiff, the meeting occurred at Plaintiff's headquarters in Harahan, Louisiana.[106] The meeting notes attached to the facsimile detail Plaintiff and Defendant's discussions regarding the manufacture of the conduits, invoices for work performed, and payments between the parties.[107] The meeting notes also mention Defendant not being charged for "manufacturer's mistakes on [a] recent Manchac, Louisiana bridge job."[108] Finally, part of the meeting notes lists an agreement by the parties to "have open and candid discussions about any and all matters of mutual interest."[109]

Plaintiff contends that despite this agreement, Defendant "maliciously and willfully misappropriated" Plaintiff's materials, trade secrets, and customer lists, and Defendant used these resources to engage in competition with Plaintiff.[110] Moreover, Plaintiff alleges that despite an "exclusivity agreement" between the parties, Defendant "breached the agreement by competing against [Plaintiff] in the Louisiana market."[111] As evidence, Plaintiff presents images of Defendant's website listing Louisiana representatives as available contacts, Defendant's marketing manual that lists the Lake Pontchartrain Bridge as one of Defendant's partners, and a Louis Armstrong International Airport manual that lists Defendant as one of the fiberglass manufacturers for the new airport terminal.[112]

---

[105] Rec. Doc. 16-1 at 5–9.

[106] Rec. Doc. 25-1 at 2.

[107] *Id.*

[108] *Id.*

[109] *Id.* at 2; Rec. Doc. 16-1 at 6.

[110] Rec. Doc. 25-1 at 1–3.

[111] Rec. Doc. 16 at 12.

[112] Rec. Doc. 25-1 at 3.

Taking Plaintiff's assertions as true, Defendant's contacts with the state of Louisiana appear to be more than "random, fortuitous, or attenuated" contacts,[113] because the parties had a course of dealing that involved continuous contacts by Defendant with the state of Louisiana. Defendant appears to have developed a pattern of visiting and directing communications to Louisiana to obtain Plaintiff's long-term partnership, business knowledge, materials, and financial resources. Defendant sought out Plaintiff in Louisiana several times to negotiate the terms of multiple agreements.[114] The agreements implied a continuing relationship between the Plaintiff in Louisiana and Defendant in Texas, whereby Defendant would manufacture products for Plaintiff and send some of these products to Louisiana.[115]

The Manchac bridge job mentioned during the 1991 meeting suggests that one of the projects that Defendant partnered with Plaintiff on occurred in Louisiana and had lasting ramifications in Louisiana.[116] Further, Defendant sent representatives to Louisiana to assist in designing some of the conduits that the parties agreed upon.[117] Plaintiff alleges that Defendant breached their agreements by utilizing Plaintiff's property and customer lists against Plaintiff while doing business in markets in and outside Louisiana, causing harm to Plaintiff's business.[118] Considering the manner in which Plaintiff asserts that Defendant "purposefully directed" several actions toward the state of Louisiana, Defendant could have expected to be haled into Louisiana courts for its agreements with Plaintiff.[119]

---

[113] *Pervasive Software Inc.*, 688 F.3d at 222 (quoting *Burger King*, 471 U.S. at 475); *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 103 (5th Cir. 2018).

[114] Rec. Doc. 25-1 at 1–2.

[115] *Id.*

[116] *Id.* at 2.

[117] *Id.* at 3.

[118] *Id.*

[119] *See Sangha*, 882 F.3d at 101.

Defendant argues that Plaintiff "does not allege that any contract [was] signed in Louisiana or any performance [was] in Louisiana."[120] The Fifth Circuit has stated, however, that when analyzing minimum contacts related to a contract, "only those acts which relate to the formation of the contract and the subsequent breach are relevant. This includes prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[121] Though Plaintiff does not allege that the parties signed a contract in Louisiana or that Defendant would manufacture the conduits in Louisiana, an analysis of the parties' negotiations, course of dealing, and consequences arising from the agreements, reveals sufficient contacts with Louisiana regarding a possible contract.

Defendant also avers that Plaintiff does not provide "facts adequate to establish a prima facie case of contract formation, failure of performance, or damages."[122] In particular, Defendant challenges whether any clear contract terms existed between the parties, whether Louisiana law would enforce such a contract, and whether Plaintiff has any actual damages.[123] Defendant appears, however, to be confused about the inquiry before the Court. On a motion to dismiss for lack of personal jurisdiction, a court must only examine whether a defendant directed its activities toward the forum state and whether the cause of action arises out of those activities.[124] The Court is not conducting an analysis of whether a plaintiff can prove the elements of its causes of action. Here, the Court analyzed Defendant's activities toward Louisiana and found that Defendant "purposefully directed" several actions toward the state of Louisiana. Therefore, the Court finds

---

[120] Rec. Doc. 8-1 at 3.

[121] *Trois*, 882 F.3d at 489 (quoting *Burger King Corp.*, 471 U.S. at 479).

[122] Rec. Doc. 19-2 at 5.

[123] *Id.*

[124] *Sangha*, 882 F.3d at 101.

that Plaintiff has established a *prima facie* case that Defendant had sufficient contacts with Louisiana, and the Court can exercise personal jurisdiction over Defendant.

## C.    *Fairness Factors*

When a plaintiff makes its *prima facie* case that the defendant has "minimum contacts" with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unfair and unreasonable.[125] In conducting the fairness inquiry, a court examines (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.[126]

Defendant argues that it would be more convenient for it to litigate in Texas because its plant is located in Texas and all agreements between the parties were intended to take place in Texas.[127] Defendant also asserts that Plaintiff could obtain convenient and effective relief in a Texas court.[128] Plaintiff counters with the argument that convenience for Defendant is not a sufficient reason for the Court to find personal jurisdiction unreasonable.[129] Plaintiff also contends that Louisiana has a substantial interest in litigating matters involving tortious acts directed towards its citizens.[130]

---

[125] *Sangha*, 882 F.3d at 102 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)).

[126] *Id.* (citing *Burger King*, 471 U.S. at 477).

[127] Rec. Doc. 21 at 5.

[128] *Id.*

[129] Rec. Doc. 21 at 15 (quoting *Consolidated Cos. v. Kern*, No. 99-2704, 2000 WL I 036186 (E.D. La. July 25, 2000)).

[130] *Id.*

Weighing all of the factors together, it would not be unfair or unreasonable to exercise jurisdiction over Defendant. Defendant's headquarters and facilities are located in Texas, which is not far from New Orleans, and travel to New Orleans would not significantly burden Defendant's officers or witnesses. According to Plaintiff, Defendant's employees have traveled to Louisiana on several occasions for business negotiations and site visits.[131] Louisiana has an interest in protecting the intellectual property, resources, and business ideas of companies that reside in the state, and Louisiana is a slightly more convenient forum in which Plaintiff may find relief. The interests of efficient administration of justice and fundamental social policies also weigh in favor of exercising jurisdiction in Louisiana because Louisiana has a stronger interest in protecting the property of its businesses and crafting policies around such. Thus, it would not be unfair or unreasonable to exercise personal jurisdiction over Defendant.

## V. Conclusion

For the foregoing reasons, the Court finds that Plaintiff has presented a *prima facie* case that Defendant is subject to specific personal jurisdiction in Louisiana, and it would not be unfair or unreasonable to exercise jurisdiction over Defendant. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Champion Fiberglass, Inc.'s ("Defendant") "Motion to Dismiss for Lack of Personal Jurisdiction"[132] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 29th day of April, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[131] Rec. Doc. 21 at 10.

[132] Rec. Doc. 8.